**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KEVIN YERIAN,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civil Action 2:17-cv-562
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Kevin Yerian ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition (ECF No. 19), and the administrative record (ECF No. 11). Plaintiff did not file a reply brief. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

Plaintiff filed his application for disability insurance benefits and supplemental security income on November 22, 2013. (R. at 227, 231.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 132, 136, 141-42, 149.) Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Susan F. Zapf (the "ALJ") held a hearing on February 8, 2016, at which Plaintiff, represented by counsel, appeared and testified.

(R. at 30-65.)

On May 4, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 11-29.) On April 27, 2017, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision. (R. at 1.) Plaintiff timely filed this action for review. (ECF No. 1.)

Plaintiff advances two errors in his Statement of Errors. First, Plaintiff maintains that remand is required because the ALJ failed to specify what weight she accorded two state agency reviewing psychologists' opinions. Second, Plaintiff contends that the ALJ failed to explain why her residual functional capacity ("RFC")[1] was less restrictive than the two state agency reviewing psychologists' opinions, which Plaintiff maintains constitutes a second, independent basis for remand. The undersigned limits her discussion to evidence bearing on these contentions of error.

## II. RELEVANT RECORD EVIDENCE

### A. Carolyn Patterson, Ph.D.

Consultative Examiner Carolyn Patterson, Ph.D. conducted a psychological evaluation of Plaintiff on January 14, 2014. (R. at 369-373.) Dr. Patterson noted that Plaintiff was casually dressed, well groomed, and cooperative. (R. at 371.) She observed Plaintiff's affect and mood to be appropriate. (*Id.*) Plaintiff reported that his current barriers to employment consist of anxiety and depression, which he indicated interfere with his ability to work because "he becomes argumentative." (R. at 369.) Plaintiff stated that he was fired from his last job for arguing with and allegedly pushing a woman, though he maintained that he did not actually push her. Plaintiff reported that he walked off of the job he held prior to that because his coworkers were

---

[1] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

2

"aggravating him," though he acknowledged that he was using cocaine at the time. (R. at 371.) Plaintiff stated that he no longer uses cocaine. Plaintiff stated that he "get[s] mad really easily" and that he "can snap" at any moment. (*Id.*) Plaintiff reported that he "doesn't think he can work" because of his tendency to anger quickly and become argumentative as a result of his anxiety and depression. (*Id.*)

Dr. Patterson assessed Plaintiff's self-reported data as "reliable," though she observed that "[s]igns of anxiety were not noted during the examination and interview." (R. at 372, 373.) Ultimately, Dr. Patterson concluded as follows:

> The claimant presented with reports of anxiety and depression as barriers to employment. He also reported taking medication for anxiety and depression. The symptoms he reported are not suggestive of anxiety and depression, perhaps because they are adequately controlled by the medication. He did describe difficulty adjusting to the loss of family members with some reports of depressed mood.

(*Id.*) In light of her conclusions, Dr. Patterson provided the following functional assessment related to Plaintiff's ability to respond appropriately to supervisors and coworkers in a work setting:

> The claimant has reported a past history of problems getting along with coworkers. He reported that he and the coworkers were taking cocaine at the time. He did report another incident when he was not on cocaine, which involve[d] him arguing with a woman. He was accused of pushing her but said he did not.

(R. at 373.) Dr. Patterson did not suggest further limitations in this regard.

**B. State Agency Evaluations**

On February 4, 2014, state agency psychologist Patricia Semmelman, Ph.D. reviewed the record and concluded that "[t]he severity of the information provided [by Plaintiff] to [Dr. Patterson] is somewhat inconsistent with [Plaintiff's primary care physician's treatment] notes and found to be only partially credible." (R. at 73.) Dr. Semmelman concluded that Plaintiff is

3

moderately limited in both his ability to (1) accept instructions and respond appropriately to criticism from supervisors; and (2) get along with coworkers; and that he is mildly restricted in the area of activities of daily living ("ADLs"). (R. at 71, 72-73.) Dr. Semmelman went on to explain that although Plaintiff reported a history of altercations with coworkers, "he was doing cocaine at the time," and noted that Plaintiff "[w]as able to cooperate and get along [with] examiner." (R. at 73.) Based on her review of the record, Dr. Semmelman assessed Plaintiff's mental RFC as follows:

> The claimant retains the ability to perform tasks that are simple/complex in nature. He would work best in environments that require minimal and superficial interaction with others.

(*Id.*) On April 8, 2014, at the reconsideration level, state agency reviewing psychologist Paul Tangeman, Ph.D agreed with the findings, conclusions, and mental RFC of Dr. Semmelman. (R. at 95, 96, 97.)

## C. The ALJ's Decision

The ALJ issued her decision on May 4, 2016. (R. at 14-24.) At step one of the sequential evaluation process,[2] the ALJ determined that Plaintiff had not engaged in substantially gainful

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

4

activity since January 16, 2013, his alleged date of onset disability. (R. at 16.) The ALJ found that Plaintiff had the following medically determinable mental impairments: depression, anxiety and history of substance abuse. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

In making this determination, the ALJ concluded that Plaintiff had "at most a mild limitation in activities of daily living." (R. at 19.) The ALJ noted that Plaintiff "testified that he performs household chores, goes to the grocery store, visits with family and friends, plays cards and watches sports such as football and racing," as well as "spending time with family and friends and going out in public." (*Id.*)

The ALJ further noted that while Plaintiff alleged anxiety and depression to Dr. Patterson, Dr. Patterson opined that Plaintiff "did not present with such symptoms." (*Id.*) The ALJ acknowledged that Plaintiff "alleged to the consulting psychologist that he did not like to leave his bedroom, and said he had been fired from jobs for arguing," but observed that "[h]is history of cocaine use was noted to be problem in the past with his anger issues," and that Plaintiff "alleged he no longer used cocaine." (*Id.*) The ALJ further found that Plaintiff "may have moderate difficulties in maintaining social functioning, especially during times of symptom exacerbation or drug use, emphasizing that the "record does not demonstrate more than moderate limitations." (*Id.*) The ALJ further concluded that "[t]his moderate limitation would not prevent occasional

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

contact with others in the work place." (*Id.*)

At step four of the sequential process, the ALJ set forth Plaintiff's mental RFC as follows:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.157(b) and 416.967(b) except he is limited to . . . detailed but not complex work tasks and is limited to occasional interaction with co-workers and supervisors with no interaction with the general public.

(R. at 20.) In reaching this determination, the ALJ noted that Plaintiff had reported to a treating physician "that his depression and anxiety had improved significantly with treatment, and that he had been able to go to football games and socialize 'more than he ever had before.'" (R. at 21.) The ALJ further noted that Plaintiff testified that he "generally gets along well with others, but had some problems with irritability." (*Id.*) Also, the ALJ observed that "mental status examinations revealed [Plaintiff] to be stable." (*Id.*) Ultimately the ALJ concluded that limiting Plaintiff to detailed but not complex work tasks and occasional interactions with others accommodated "all mental limitations due to residual anxiety, depression and substance abuse." (R. at 22.) The ALJ acknowledged her reliance on the state agency psychologists in reaching this decision, noting that she "generally concurs" with their mental assessments noting some moderate limitations. (*Id.*)

The ALJ relied upon the Vocational Expert's ("VE") testimony to conclude that jobs exist in significant numbers in the national economy that Plaintiff can perform. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 24.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

6

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.   ANALYSIS

Plaintiff asserts that remand is required because (1) the ALJ failed to specify what weight she accorded the two state agency reviewing psychologists' opinions; and (2) the ALJ failed to explain why her mental RFC was less restrictive than the two state agency psychologists' opinions. The undersigned finds both assertions unpersuasive.

7

### A. Weight Assigned to State Agency Opinions

First, it is clear from the ALJ's decision that she gave some weight to the state agency reviewing psychologists' opinions. The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Further, regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii). Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005)

(harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error); *cf. Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Here, contrary to Plaintiff's assertion, the ALJ's decision reflects that she assigned some weight to the state agency reviewing psychologists, Drs. Semmelman and Tangeman. The ALJ specifically noted that she "considered the opinions of the state agency psychologists and generally concurs with their mental assessments noting some moderate limitations." (R. at 22.) The ALJ went on to account for the moderate mental limitations advanced by the state agency psychologists in her RFC. (R. at 20.) The ALJ's decision reflects that she relied upon other portions of the opinions of Drs. Semmelman and Tangeman as well, including, for example, their determination that Plaintiff had mild limitations in the areas of ADLs. (R. at 19.)

Although Plaintiff acknowledges that the ALJ noted she generally concurred with the opinions of Drs. Semmelman and Tangeman, he maintains that this is somehow insufficient. To the extent Plaintiff suggests that the ALJ was required to use specific words or phrases when assigning weight to these opinions, the undersigned disagrees, particularly because "the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given." *Friend*, 375 F. App'x at 551. Because the ALJ's decision reflects that she gave some weight to these opinions and the reasons why, the undersigned finds no reversible error.

9

Relatedly, Plaintiff points to a typographical error in the ALJ's discussion of the state agency reviewing psychologists' opinions to argue that the ALJ confused Plaintiff's physical RFC with his mental RFC in considering the opinions. (Pl.'s Statement of Errors 8, ECF No. 16.) Specifically, the AJL stated: "In assessing the claimant's *physical* residual functional capacity, the undersigned has considered the opinions of the state agency psychologists and generally concurs with their mental assessments noting some moderate limitations." (*Id.*, citing R. at 22) (emphasis added.) It is clear from the context as well as the decision as a whole, however, that the ALJ considered the opinions in assessing Plaintiff's *mental* RFC. In fact, in the same sentence the ALJ notes her general concurrence with the "mental assessments" of Drs. Semmelman and Tangeman. (R. at 22.) As such, the undersigned is not persuaded that the ALJ confused Plaintiff's physical RFC with his mental RFC.

For all of these reasons, the undersigned **RECOMMENDS** that Plaintiff's first contention of error be **OVERRULED**.

### B. Explanation of Limitations in Mental RFC

Plaintiff next contends that the ALJ failed to explain why her mental RFC accounted for less restrictive limitations than those advanced by the state agency reviewing psychologists. The undersigned finds this contention of error unpersuasive as well.

The ALJ is charged with the final responsibility for determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as your residual functional capacity, . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). Social Security Ruling 96-8p instructs that the ALJ's

residual functional capacity assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. *See also* 42 U.S.C. § 423(d)(5)(B). An ALJ is required to explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, Plaintiff posits that the ALJ's mental RFC was less restrictive than the opinions of the state agency reviewing psychologists in two distinct ways, and that the ALJ failed to explain the basis for imposing these less restrictive limitations.

Plaintiff first asserts that the ALJ's RFC imposes less restrictive limitations because it limits Plaintiff to "occasional" interaction with coworkers and supervisors as opposed to "minimal" interaction as proposed by Drs. Semmelman and Tangeman. The Court need not determine whether "occasional" is less restrictive than "minimal" as Plaintiff contends. Even if it is, the ALJ adequately explained how the evidence supports the limitations set forth in her mental RFC and substantial evidence supports her decision.

The ALJ provided ample explanation for her conclusion that Plaintiff's "moderate

limitation would not prevent occasional contact with others in the work place," including citations to substantial supporting evidence. (R. at 19.) For example, the ALJ noted that Plaintiff reported to a treating physician "that his depression and anxiety had improved significantly with treatment, and that he had been able to go to football games and socialize 'more than he ever had before.'" (R. at 21.) The ALJ also observed that "mental status examinations revealed [Plaintiff] to be stable." (R. at 19.) The ALJ further noted that Plaintiff goes to the grocery store, visits with family and friends, plays cards and watches sports, and that he goes out into public.

Further, the ALJ emphasized that although Plaintiff alleged anxiety and depression to Dr. Patterson, Dr. Patterson opined that Plaintiff "did not present with such symptoms." (*Id.*) The ALJ acknowledged that Plaintiff "said he had been fired from jobs for arguing," but observed that "[h]is history of cocaine use was noted to be problem in the past with his anger issues," and that Plaintiff "alleged he no longer used cocaine." (*Id.*) The ALJ further found that Plaintiff "may have moderate difficulties in maintaining social functioning, especially during times of symptom exacerbation or drug use, emphasizing that the "record does not demonstrate more than moderate limitations." (*Id.*) The ALJ ultimately concluded that "[t]his moderate limitation would not prevent occasional contact with others in the work place." (*Id.*) Based on the foregoing, the undersigned concludes that the ALJ adequately explained how the evidence supports her mental RFC and finds that substantial evidence supports her decision. Consequently, Plaintiff's assertion that the Court is left to wonder whether the opinions of Drs. Semmelman and Tangeman were rejected or overlooked lacks merit.

Second, Plaintiff points out that although Drs. Semmelman and Tangeman opined that he should be limited to "superficial" interaction with coworkers and supervisors, the ALJ did not similarly incorporate a qualitative limitation in her mental RFC. (R. at 73, 97, 20.) Plaintiff

12

relies upon *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to argue that the ALJ's failure to incorporate the qualitative limitation constitutes reversible error. Plaintiff contends that *Ealy* stands for the proposition that an ALJ is required to include every limitation proposed by a medical expert upon whose opinion the ALJ relies. (Pl.'s Statement of Errors 11, ECF No. 16.) Because the ALJ "generally concur[red]" with Drs. Semmelman and Tangeman, Plaintiff contends she was required to account for all of their proposed limitations in her mental RFC. The undersigned finds this contention of error to be without merit.

As an initial matter, Plaintiff misinterprets *Ealy*. In *Ealy*, both the claimant's doctor and the ALJ concluded that Plaintiff was moderately limited in pace, speed, and concentration. *Ealy*, 594 F.3d at 516 n.4. To account for these and other limitations, the claimant's doctor limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516. The ALJ's RFC, however, included only a limitation to "simple repetitive tasks and instructions in nonpublic work settings." *Id.* In other words, the RFC failed to account for limitations in pace, speed, and concentration, even though the ALJ found the claimant to have moderate limitations in these areas. *Id.* The hypothetical posed by the ALJ to the VE tracked the ALJ's RFC, thus also failing to account for these limitations. *Id.* The Sixth Circuit held that the VE's testimony could not serve as substantial evidence to support the ALJ's decision as a result. *Id.* at 517.

Here, in contrast, the ALJ did not find that Plaintiff was qualitatively limited in his ability to interact with coworkers or supervisors. Nor did the ALJ adopt the opinions of Drs. Semmelman and Tangeman. She was therefore not required to incorporate all of their proposed limitations into her RFC. Rather, the ALJ was charged with determining the RFC based on the relevant evidence and explaining how that evidence supports the RFC. 20 C.F.R. §§ 404.1527(e),

13

416.927(e); *Berry*, 2010 WL 3730983, at *8; S.S.R. 96-8p, 1996 WL 374184, at *6-7. As discussed above, the ALJ's decision reflects that she did precisely that.

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## V. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and

recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

    **IT IS SO ORDERED.**

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE